UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MALGORZATA KRAWCZYK,
*Personal Representative of*
*Estate of Robert Klepacki*,

        Plaintiff,                             Case No. 1:14-cv-914

v.                                                  HON. JANET T. NEFF

HAGAR TOWNSHIP et al.,

        Defendants.
_____/

**OPINION**

        Pending before the Court is Defendants' Motion to Dismiss pursuant to FED. R. CIV. P. 12(b)(6) (Dkt 23). Plaintiff has filed a Response in opposition (Dkt 26), and Defendants have filed a Reply (Dkt 25). Having fully considered the parties' briefs and the record, the Court concludes that oral argument is unnecessary to resolve the pending motion. *See* W.D. Mich. LCivR 7.2(d). For the reasons that follow, the Court denies the Motion as to Counts I and II, and grants the Motion as to Counts III and IV.

**I. Facts**

        Plaintiff's husband, Robert Klepacki, drowned in a Lake Michigan swimming accident at Hagar Park beach in Berrien County, Michigan, on the afternoon of Sunday, August 28, 2011, when he was caught and pulled under water by rip currents. Plaintiff was on the beach when Robert yelled for help.

        Plaintiff alleges that the National Weather Service had issued both a small craft advisory warning and a rip current warning that day for the area of the beach where Robert went for a swim,

and that Defendants knew or should have known about those two warnings, but posted no red flags at the beach. Further, Defendants did not have any policy or system to warn beachgoers of the dangerous water conditions that day, and no lifeguard was on duty.[1]

Plaintiff filed this action August 27, 2014 against Defendants Hagar Township; Izzy DiMaggio, Hagar Township Supervisor; and Deborah L. Kelley, Hagar Township Clerk, since Hagar Park is a Township-operated beach. Plaintiff's First Amended Complaint (Dkt 15) alleges four counts:

    Count I—Gross Negligence as to Defendant DiMaggio

    Count II—Gross Negligence as to Defendant Kelley

    Count III—Nuisance Per Se against the Township

    Count IV—42 U.S.C. § 1983 against the Township

Defendants move to dismiss all claims. In response to Defendants' motion, Plaintiff concedes that her nuisance per se claim (Count III) is appropriately dismissed; thus, the Court addresses only the remaining three counts.

## II.  Legal Standard

Federal Rule of Civil Procedure 12(b)(6) authorizes the court to dismiss a complaint if it "fail[s] to state a claim upon which relief can be granted."[2] In deciding a motion to dismiss for failure to state a claim, the court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded factual allegations in the complaint as true. *Thompson v. Bank*

---

[1] Defendants concede the underlying facts alleged by Plaintiff for purposes of this motion.

[2] Defendants' motion incorrectly seeks "summary judgment" pursuant to FED. R. CIV. P. 12(b)(6); however, summary judgment is governed by Rule 56. Defendants' motion is filed in advance of their answer, based on Plaintiff's pleadings, and is properly considered as a motion to dismiss.

*of Am., N.A.*, 773 F.3d 741, 750 (6th Cir. 2014).  However, a court "need not ... accept as true legal conclusions or unwarranted factual inferences."  *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006).

The complaint must present "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).

### III.  Analysis

Defendants move for dismissal of Counts I and II on the grounds that as elected officials, Defendants DiMaggio and Kelley have absolute immunity under the Governmental Tort Liability Act (GTLA), MICH. COMP. LAWS § 691.1407(5), or are entitled to qualified immunity pursuant to MICH. COMP. LAWS § 691.1407(2).  Defendants move for dismissal of Count IV contending that there are no allegations of arbitrary conduct to inflict injury on the decedent on the part of Hagar Township, or other facts, to establish a viable claim under the First, Fifth or Fourteenth Amendments.

Defendants correctly note that Plaintiff relies on an outdated legal standard for motions to dismiss under Rule 12(b)(6), i.e., "'[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Kottmyer*, 436 F.3d at 688 (quoting *Conley v. Gibson*, 355 U.S.

41, 45-46 (1957)) (*see* Pl. Resp. at PageID.144). *Twombly* and *Iqbal* changed the long-standing rule of *Conley*. As noted above with regard to the legal standard, a plaintiff must allege "'enough facts to state a claim to relief that is plausible on its face.'" *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1050 (6th Cir. 2011) (quoting *Twombly*, 550 U.S. at 570). Applying the proper standard, the Court concludes that Plaintiff's claims alleged in Counts I and II are not subject to dismissal at the pleading stage; however, the conclusory claims set forth in Count IV do not pass muster under the tests set forth in *Twombly* and *Iqbal*.

A. Counts I and II

Plaintiff's claims in Counts I and II are based on allegations of gross negligence against DiMaggio and Kelley, respectively, who were the elected Supervisor (DiMaggio) and Clerk (Kelley) of Hagar Township at the time of Klepacki's death. Defendants seek dismissal based on governmental immunity.

"[B]y its terms, the GTLA provides that unless one of the five statutory exceptions applies, a governmental agency is protected by immunity." *Mack v. City of Detroit*, 649 N.W.2d 47, 55-56 (Mich. 2002) (emphasis omitted). The two exceptions at issue here are MICH. COMP. LAWS § 691.1407(2) and (5), which provide immunity from tort liability for certain governmental officials:

> (2) Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service or caused by the volunteer while acting on behalf of a governmental agency if all of the following are met:
>
> > (a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.

> (b) The governmental agency is engaged in the exercise or discharge of a governmental function.
>
> (c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.
>
> * * *
>
> (5) A judge, a legislator, and the elective or highest appointive executive official of all levels of government are immune from tort liability for injuries to persons or damages to property if he or she is acting within the scope of his or her judicial, legislative, or executive authority.

Defendants first assert that as Supervisor and Clerk, DiMaggio and Kelley were the highest elected officials at their "levels of government" in Hagar Township, and under subsection (5) of the GLTA, they have absolute immunity from tort liability because Plaintiff has pled no facts sufficient to avoid the protection of the GLTA. *See Mack*, 649 N.W.2d at 56 (Mich. 2002). Plaintiff argues, however, that Defendants' assertions lack any factual support, and provide no basis for dismissal based on the pleadings. Plaintiff additionally argues that even if subsection (5) applied to them, DiMaggio and Kelley cannot each be the Township's top executive under that exception.

Plaintiff relies on *Rankin v. City of Highland Park*, Case No. 318385, 2015 WL 773734, at *8 n.4 (Mich. Ct. App. Feb. 24, 2015), in which the Court denied dismissal to the defendants based on absolute immunity for failure to provide any meaningful discussion of the factual circumstances justifying immunity as to the defendant executive officials:

> Absolute immunity only applies [] provided that the highest ranking executive official is acting within the scope of his or her executive authority, [MICH. COMP. LAWS §] 691.1407(5), and whether he or she acted within the scope of his or her executive authority requires consideration of [] *"the nature of the specific acts alleged, the position held by the official alleged to have performed the acts, the charter, ordinances, or other local law defining the official's authority, and the structure and allocation of powers in the particular level of government."* Petipren[ *v. Jaskowski*, 833 N.W.2d 247, 255 (Mich. 2013)] (citation omitted). Although it seems plain that Yopp, Ford and Veal are, according to the Highland Park Charter,

>the highest ranking executive officials of a level of government, defendants have not provided us with a meaningful discussion of the authority enjoyed by these officials by virtue of their positions.

(Emphasis added). The court held that because the defendants had not provided a discussion of the executive authority possessed by each official as demonstrated by local law defining the officials' powers, they were not entitled to dismissal under subsection (5) on the record presented. *Rankin*, 2015 WL 773734, at *8 n.4.

Here, as in *Rankin*, the Court is persuaded that Plaintiff has pleaded facts in avoidance of governmental immunity, and Defendants have not established to the contrary, that they are entitled to absolute immunity under MICH. COMP. LAWS § 691.1407(5) on the basis of the record at this juncture of the case. To qualify for immunity from tort liability, an individual governmental employee must raise and prove immunity as an affirmative defense. *Petipren*, 833 N.W.2d at 254 n.31; *Odom v. Wayne Cnty.*, 760 N.W.2d 217, 227-28 (Mich. 2008). The defendant must prove his or her entitlement to immunity by establishing, consistent with the statute's plain language, (1) that he or she is a judge, legislator, or the elective or highest appointive executive official of a level of government and (2) that he or she acted within the scope of his or her judicial, legislative, or executive authority. *Petipren*, 833 N.W.2d at 254 (footnote omitted). Defendants have failed to show they are entitled to absolute immunity.

For the same reasons, the Court determines that Defendants are not entitled to dismissal on the basis of qualified immunity under MICH. COMP. LAWS § 691.1407(2), the so-called "employee provision." *See Robinson v. City of Detroit*, 613 N.W.2d 307, 317 (Mich. 2000).[3] Immunity under

---

[3] The Michigan Supreme Court's opinion in *Petipren v. Jaskowski*, 833 N.W.2d 247, 253-55, 258-59, 263-66 (Mich. 2013), sets forth the history of the GTLA and explains the distinction between absolute immunity in subsection (5) and immunity for lower-level employees and officials in subsection (2).

subsection (2) requires that three conditions be met. *See* MICH. COMP. LAWS § 691.1407(2)(a), (b) and (c). In their briefing, the parties' dispute focuses on subparagraph (c), and the issue of proximate cause. Defendants argue that pursuant to *Robinson*, Plaintiff must show that Defendants Dimaggio's and Kelley's alleged gross negligence was "the" proximate cause of the injury at issue, i.e., "the one most immediate, efficient, and direct cause" of the injury or damage." *See Robinson*, 613 N.W.2d at 319. Defendants assert that Plaintiff alleges that the proximate cause of Klepacki's death was the rip current, not Defendants Dimaggio's and Kelley's action or inaction (Def. Mot. Br. at PageID.104, citing Am. Compl. ¶¶ 31-33).

However, Plaintiff argues that the question of proximate cause always depends in part on foreseeability, and "[p]roximate cause is that which bridges to produce the particular consequences without the intervention of any independent, unforseen cause, without which the injury would not have occurred" (Pl. Resp. at PageID.147-48, citing *Moning v. Alfono*, 254 N.W.2d 759, 765 (Mich. 1977); *McMillian v. Vliet*, 374 N.W.2d 679, 681-82 (Mich. 1985)). Plaintiff contends that, here, the circumstances support a conclusion that Defendants' conduct was the proximate cause of the injury: Defendants had not one, but two separate warnings from the National Weather Service: a small craft advisory and a rip current warning. Defendants knew how dangerous rip currents are to beachgoers, and knew or should have known how deadly rip currents can be, particularly to unsuspecting visitors to the beach. Moreover, proximate cause is generally a fact question to be decided by the jury. *Schutte v. Celotex Corp.*, 492 N.W.2d 773, 776 (Mich. Ct. App. 1992).

The Court concludes that Plaintiff's First Amended Complaint sufficiently pleads a claim in avoidance of governmental immunity based on gross negligence. The issue of proximate cause is not properly determined on the basis of the pleadings under the circumstances presented.

Accordingly, Defendants are not entitled to dismissal of Plaintiff's claims in Counts I and II pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim.

## B. Count IV

In Count IV, Plaintiff alleges a claim pursuant to 42 U.S.C. § 1983, asserting that the Township deprived Klepacki of his federally protected right to pursue litigation and also deprived him of his rights under the Fifth and Fourteenth Amendments. To state a viable claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish: (1) he was deprived of a right secured by the Constitution or federal laws; and (2) the deprivation was committed by a person acting under color of state law. *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

Plaintiff alleges that the Township instituted the following safety policies regarding the beach based on limiting Klepacki's and other beach users' access to courts and the Township's interest in avoiding lawsuit liabilities:

A. Having no lifeguards on duty at the beach;

B. Not providing adequate rescue devices at the beach;

C. Choosing not to use a flag system which would warn beach users of dangerous conditions on a particular day;

D. Having no safe swimming area buoys; and

E. Having no structure or plan in place to close the beach in response to dangerous conditions.

Plaintiff argues that while the Township implements these policies and thereby deprives Plaintiff and other beach users of their right to pursue litigation, the Township uses the beach and Lake Michigan as an advertising ploy to attract tourists like the decedent. Thus, the Township, under color of law, has subjected the decedent/Plaintiff to the deprivation of rights, privileges, and

8

immunities secured to him by the Constitution and laws of the United States, and particularly his rights not to be deprived of liberty without due process of law, guaranteed by the Fifth and Fourteenth Amendments, and his right to equal protection of the laws guaranteed under the Fourteenth Amendment. Plaintiff argues that the Township "may not constitutionally act to diminish the rights of those it lures in with that self-promotion. It may not self-promote when all it really does is self-protect" (Pl. Resp. at PageID.150).

Plaintiff cites no on-point authority supportive of § 1983 liability under the circumstances presented. The single case cited, *Boddie v. Conn.*, 401 U.S. 371 (1971), involved a class action on behalf of women in Connecticut receiving state welfare assistance and desiring to obtain divorces but barred from doing so by their inability to pay required court fees and costs incident to a divorce proceeding. The Court held that "given the basic position of the marriage relationship in this society's hierarchy of values and the concomitant state monopolization of the means for legally dissolving this relationship, due process prohibit[s] a State from denying, solely because of inability to pay, access to its courts to individuals who seek judicial dissolution of their marriages." *Id.* at 374.

> In concluding that the Due Process Clause of the Fourteenth Amendment requires that these appellants be afforded an opportunity to go into court to obtain a divorce, we wish to re-emphasize that we go no further than necessary to dispose of the case before us, a case where the bona fides of both appellants' indigency and desire for divorce are here beyond dispute. We do not decide that access for all individuals to the courts is a right that is, in all circumstances, guaranteed by the Due Process Clause of the Fourteenth Amendment so that its exercise may not be placed beyond the reach of any individual, for, as we have already noted, in the case before us this right is the exclusive precondition to the adjustment of a fundamental human relationship. The requirement that these appellants resort to the judicial process is entirely a state-created matter. Thus we hold only that a State may not, consistent with the obligations imposed on it by the Due Process Clause of the Fourteenth Amendment, pre-empt the right to dissolve this legal relationship without affording all citizens access to the means it has prescribed for doing so.

*Id.* at 382-83.

Plaintiff clearly has access to the courts to adjudicate the claims presented. As Defendants point out, Plaintiff presents fairly typical tort claims under state law that do not give rise to claims for violations of Plaintiff's constitutional rights. *See, e.g.*, *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 116 (1992) ("Petitioner's claim is analogous to a fairly typical tort claim under state law, which is not supplanted by the Due Process Clause"). The Court finds no plausible basis for legal redress on a theory of denial of access to the courts under the circumstances presented. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plaintiff's constitutional claims in Count IV lack facial plausibility, and therefore, Defendants' motion to dismiss this count is properly granted.

## IV. Conclusion

Having fully considered the parties' arguments and relevant legal authority, the Court concludes that Defendants' motion to dismiss is properly denied as to Counts I and II, but granted as to Counts III and IV of Plaintiff's First Amended Complaint.

An Order will be entered consistent with this Opinion.


Dated: March 3, 2016                    /s/ Janet T. Neff
                                                            JANET T. NEFF
                                                            United States District Judge